**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CRIMINAL CASE NO. 5:10-78-JMH-20
CIVIL CASE NO. 5:12-7202**

**UNITED STATES OF AMERICA**                                           **PLAINTIFF**

**v.**                                              **ORDER AND
REPORT AND RECOMMENDATION**

**CHARLES EDWARD HUTSELL**                                          **DEFENDANT**

**\* \* \* \* \* \* \* \* \* \***

On December 9, 2010, Defendant Charles Edward Hutsell entered into a binding Plea Agreement in which he pled guilty to two drug distribution offenses and waived his right to appeal and to collaterally attack his guilty plea, conviction, and sentence. (R. 332, 540). This case is presently before the Court, however, because Hutsell has nonetheless filed a collateral attack in the form of a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. (R. 519). Hutsell's Motion to Supplement Pleading (R. 708) is also pending, which the Court will grant as unopposed.[1]

With respect to the pending § 2255 Motion, applicable law provides that a plea agreement containing a waiver of rights will be enforced if a defendant knowingly, voluntarily, and intelligently entered into the agreement. Here, the Plea Agreement and its waiver provision are valid. The ineffective assistance of counsel claims raised by Defendant in his § 2255 Motion as well as the

---

[1]Defendant filed his Motion to Supplement Pleading on February 13, 2014. (R. 708). The Government chose not to file a response, and the Motion will therefore be granted as unopposed.

additional claim raised in his Supplement are precluded by the waiver. Those claims, as well as Defendant's attack on the Court's subject-matter jurisdiction, are also faulty on the merits.

As part of his § 2255 Motion, Defendant additionally claimed a right to a reduction in sentence based upon the retroactivity of the Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111-220, 124 Stat. 2372. This aspect of Defendant's § 2255 Motion was recently ruled upon by the presiding District Judge (*see* R. 745), with Defendant's sentence of imprisonment being reduced from 144 months to a term of 120 months. (*Id.*; R. 746). This Report and Recommendation addresses the remainder of Defendant's claims presented in his § 2255 Motion.

As explained more fully below, it will be herein **recommended** that the District Court **deny** the remaining claims in Defendant's § 2255 Motion.

## I.   BACKGROUND

Defendant was indicted on November 18, 2010, by a federal grand jury sitting in the Eastern District of Kentucky, and charged with the following crimes:

- conspiring to knowingly and intentionally distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), in violation of 21 U.S.C. § 846;

- knowingly and intentionally maintaining a residence for the purpose of distributing 50 grams or more of cocaine base (crack cocaine) and marijuana within 1,000 feet of a public secondary school, in violation of 21 U.S.C. § 856(a)(1) and § 860;

- conspiring to knowingly and intentionally distribute a mixture or substance containing a detectable amount of marijuana, in violation of § 846; and

- 3 counts[2] of knowingly and intentionally distributing a mixture or substance containing a detectable amount of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1).

(R. 308).

On December 9, 2010, Defendant pled guilty to Counts 5 and 6 of the Third Superseding Indictment, charging distribution of cocaine base and distribution of 5 grams or more of cocaine base, both in violation of § 841(a)(1). (R. 332, 540). As part of the binding Plea Agreement between Defendant and the United States, Defendant waived his right to file an appeal or collaterally attack his guilty plea, conviction, and sentence. (R. 333, ¶ 9). As a benefit of entering into the Plea Agreement, the United States dismissed Counts 1 through 4 of the Third Superseding Indictment. (*Id.*, ¶ 1). At the December 9, 2010, rearraignment, the District Court approved the Plea Agreement. (*See* R. 540, at 12). On February 25, 2011, consistent with that Agreement, the District Court sentenced Defendant to a term of 144 months of imprisonment on each of the two counts to which he pled, to be served concurrently. (R. 459, at 2). The District Court also imposed 6 years of supervised release on Count 5 and 8 years of supervised release on Count 6, to run concurrently, for a total term of 8 years of supervised release. (*Id.* at 3). Defendant did not file a direct appeal of the District Court's Judgment.

On March 6, 2012, Defendant, *pro se*, filed this § 2255 Motion. (R. 519). On June 7, 2012, after being granted an extension of time, the United States filed a Response to Defendant's Motion. (R. 542). On June 25, 2012, Defendant filed a Reply. (R. 545).[3] As it was anticipated that the

---

[2]Two of these counts specified that the amount of cocaine in the transaction was 5 grams or more. (*See* R. 308).

[3]After Defendant's Motion To Vacate became ripe, but before the issuance of this Report and Recommendation, Defendant filed a Motion to Show Cause (R. 553), in which Defendant requested that the

Supreme Court would issue an opinion in the summer of 2012 that could be relevant to Defendant's resentencing claims, the United States asked for, and was granted, an abeyance of this matter pending that Supreme Court ruling. (R. 542). Subsequent thereto, the United States was ordered to file a supplemental response to address any impact of that Supreme Court decision, *Dorsey v. United States*, 132 S. Ct. 2321 (2012), on the instant matter. (R. 558). On September 14, 2012, the United States filed its Supplemental Response (R. 561). On October 4, 2012, Defendant filed his Reply to the Supplemental Response (R. 569).

On October 3, 2013, the Court granted the United States' Motion to hold this matter in abeyance pending the Sixth Circuit's *en banc* consideration of *United States v. Blewett*, 719 F.3d 482 (6th Cir. 2013), which the United States expected might have an impact on the issues before the Court. Upon the filing of the Sixth Circuit's *en banc* decision in *Blewett*, 746 F.3d 647 (6th Cir. 2013), the Court ordered the United States to file a supplemental memorandum explaining in what way it believed the Sixth Circuit's *en banc* ruling in *Blewett* impacts the pending § 2255 Motion. (R. 702). On January 21, 2014, the United States filed its Supplemental Response. (R. 704). On February 13, 2014, Defendant filed a Motion to Supplement Pleading, asserting a new claim that he should not have been subject to the enhanced mandatory minimum on Count 6 for having a prior felony conviction and also provided additional legal argument in support of the claims raised in his original § 2255 Motion. (R. 708). On August 27, 2014, Defendant moved for expedited consideration of that part of his § 2255 Motion seeking a reduction of his sentence (R. 742), which request was granted by the presiding District Judge, with Defendant's sentence reduced to 120

---

Court order the Kentucky State Police to show cause regarding an allegedly deficient reply he received in response to his request for certain records. The Court denied the Motion, noting that Defendant's collateral attack on his federal sentence was not the proper avenue for such a request. (R. 554).

months (R. 745).  The remaining claims in Defendant's § 2255 Motion are before the Court and the subject of this Report and Recommendation to the presiding District Judge.

## II.    ANALYSIS

Under § 2255, a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  *See* § 2255(a).  A § 2255 motion does not have to be founded on constitutional error or even federal law.  *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006); *see also Metheny v. Hamby*, 835 F.2d 672, 674 (6th Cir. 1987).  However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (*citing Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  To obtain relief under § 2255 for a non-constitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process.  *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *recognized as abrogated on other grounds by Kumar v. United States*, 163 F. App'x 361 (6th Cir. 2006); *see also McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).  Therefore, a defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid.  *Pough v. United States*, 442 F.3d 959,

964 (6th Cir. 2006) (*citing Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).  A defendant must prove his allegations by a preponderance of the evidence.  *Pough*, 442 F.3d at 964.

In the case at bar, Defendant raised and there remains pending before the Court the following four issues in the § 2255 Motion and Supplement thereto:  (1) defense counsel provided ineffective assistance; (2) the District Court lacked subject-matter jurisdiction over him; (3) his sentence is based on an improper quantity of cocaine base; and (4) he should not have been subject to the enhanced mandatory minimum under 21 U.S.C. §§ 841(b)(1)(B) and 851.  (R. 519, 708).  As discussed below, each of these claims lacks merit.

A.   **Defendant's ineffective assistance of counsel claims are barred by the waiver contained in his Plea Agreement.  Even if considered, they would fail on their merits**.

Defendant's Plea Agreement waived his right to collaterally attack his guilty plea, conviction, and sentence.  (R. 333, ¶ 9).  The Sixth Circuit has held that when a defendant knowingly, intelligently, and voluntarily waives the right to pursue collateral relief as part of a plea agreement, the defendant is barred from bringing a § 2255 motion, and this waiver extends to ineffective assistance of counsel claims.  *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001).  The exception to this rule is where the collateral attack concerns the validity of the guilty plea or waiver.  *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (*citing Watson*, 165 F.3d at 489).  Here, since Defendant disputes the voluntariness of the Plea Agreement, and therefore disputes the Agreement's validity, the Court will first examine the Plea Agreement and then proceed to discuss the merits of the ineffective assistance claims.  Defendant's arguments are unconvincing under either approach.

Defendant contends that he entered into the Plea Agreement involuntarily (R. 519, at 1), an assertion that calls into question the validity of the Agreement and thereby escapes the ambit of the

waiver provision.  In support of his claim, Defendant notes that counsel "coerced" him into signing

the Plea Agreement by telling Defendant that he would face 20 years in prison if he did not sign the

document.  (*Id.* at 6).  The transcript of the rearraignment, however, does not support Defendant's

contention.  Specifically, the Court engaged Defendant in the following colloquy:

> COURT:        Okay, the court has appointed Mike Murphy to represent you in this
>               matter.  Are you fully satisfied with the counsel and representation
>               and advice rendered to you by Mr. Murphy?
>
> DEFENDANT:        Yes, I am.
> . . . .
>
> COURT:         . . . Mr. Hutsell, did you hear Miss Hawkins just now tell me the
>               pertinent parts of the plea agreement you have entered into with the
>               government?
>
> DEFENDANT:        Yes, I have.
>
> COURT:        And has she stated the pertinent parts of the plea agreement as you
>               understand the agreement?
>
> DEFENDANT:        Yes, she has.
>
> COURT:        Has anyone made any promises or assurances to you --
>
> DEFENDANT:        No, sir.
>
> COURT:         -- different from the plea agreement?
>
> DEFENDANT:        No, sir.
>
> COURT:        Anyone in any way attempt to force you to plead guilty?
>
> DEFENDANT:        No, sir.

(R. 540, at 3-4, 8).

The Supreme Court has instructed that "the representations of the defendant, his lawyer, and

the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea,

constitute a formidable barrier in any subsequent collateral proceedings," and that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Thus, Defendant's statements, under oath, that he was satisfied with counsel's representation and advice, and that no one forced him to plead guilty, belie his claim of entering into the Plea Agreement involuntarily.

Nor does the conduct described by Defendant indicate that defense counsel coerced Defendant. Rather, counsel was doing what defense attorneys are expected to do: advocate on behalf of their clients. Part of that advocacy obligation is to candidly inform one's client as to the likely consequences of not signing a plea agreement. Defendant faced numerous drug-related felonies, and counsel knew that the United States would likely seek far tougher penalties if Defendant refused to enter into a plea agreement. Counsel, therefore, was merely acting in his client's best interest by explaining the possible sentences for the charges he faced, and urging him to enter into an agreement that incorporated a dismissal of charges carrying a higher statutory minimum. This fact pattern does not evince impermissible pressure.

Further, the record provides ample demonstration that Defendant knowingly, voluntarily, and intelligently entered into the subject Plea Agreement. The Plea Agreement, signed by Defendant, adequately explained the nature of the charges arrayed against Defendant, the alleged facts of the case, the potential penalties, and Defendant's waiver of his rights to appeal and collaterally attack his guilty plea, conviction, and sentence. (*See* R. 333). It also contained the following: "[t]he Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary." (*Id.*, ¶ 17). Defendant made similar

8

representations under oath at his rearraignment.  (*See* R. 540, at 3-12).  In other words, Defendant explicitly indicated that he was entering into the Plea Agreement knowingly, voluntarily, and intelligently.  Consequently, the Plea Agreement and the waiver are enforceable, and in accordance with *Davila*, Defendant's ineffective assistance of counsel claims are barred by the waiver provision.

Even if Defendant's ineffective assistance claims were not otherwise barred by the waiver provision, the claims nonetheless also fail on the merits.  Defendant argues that defense counsel provided deficient representation.  Defendants have a right to competent representation during plea negotiations.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (*citing McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  Effective representation during plea negotiations is measured by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Lafler*, 132 S. Ct. at 1384; *see also Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  First, a defendant must demonstrate that counsel's performance was deficient.  *Strickland*, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  The Court expanded on this concept: "in light of all the circumstances, the identified acts or omissions [must be] outside the wide range of professionally competent assistance."  *Id.* at 690; *see also Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010) ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.", *quoting Strickland*, 466 U.S. at 688).  Second, defense counsel's errors must have prejudiced the case.  *Strickland*, 466 U.S. at 687.  Defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," *id.*, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  The *Strickland* standard is highly deferential to

9

defense counsel, and there is a strong presumption of adequate representation. *See Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (*citing Cullen v. Pinholster*, S. Ct. 1388, 1403 (2011)); *see also Pough*, 442 F.3d at 966 (warning that courts should not "indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors," *quoting McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004) (en banc)).

Defendant first argues that counsel was ineffective for failing to "raise facts evidencing the lack of essential elements of conspiracy that would have substantially reduced the quantity of drugs attributed to petitioner resulting in a longer term of imprisonment allowable by law." (R. 519, at 5). However, the conspiracy to distribute cocaine base (crack cocaine) charge, Count 1 of the Third Superseding Indictment, was dismissed per the binding Plea Agreement.  Nowhere in the Plea Agreement or the Presentence Investigation Report (PSR) is there mention of this conspiracy other than that the charge of conspiracy was being dismissed (*see* R. 333).  Defense counsel negotiated with the United States to dismiss the conspiracy charge—a crime carrying a mandatory minimum sentence of 20 years (prior to the Fair Sentencing Act amendments)—in exchange for convictions on the lesser charges of drug distribution.

Further, the facts surrounding the amount of cocaine attributed to Defendant as relevant conduct, 38.648 grams, were not based on the conspiracy charge or cocaine attributed solely to other members of the conspiracy as Defendant asserts (*see* R. 545, at 6), but on the facts surrounding Counts 5 and 6 as outlined in the Plea Agreement and the PSR.  (R. 333, at 2-4; PSR, at 6). Defendant argues that his relevant conduct should have been limited to less than 500 milligrams of cocaine base.  (*Id.*).  However, the Plea Agreement sets forth the factual basis for Count 5, which

10

explained that a laboratory analysis determined that the drug Defendant sold to a confidential informant (CI) on May 3, 2010, was 858 milligrams of cocaine base. (R. 333, at 2). In addition, the Plea Agreement further provided the factual basis for Count 6, stating that Defendant was directly involved in obtaining the cocaine sold to a CI on May 4, 2010, and that a laboratory analysis determined the drug to be 37.79 grams of cocaine base. (*Id.* at 2-3). Defendant admitted to these facts as evidenced by his signature on the Plea Agreement (*see id.*) and his sworn statements during his rearraignment (*see* R. 540, at 8, 9-12). These admissions "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 73-74. Given Defendant's admissions in the Plea Agreement and his sworn statements during rearraignment wherein he admitted to distributing more than 37 grams of cocaine base, counsel cannot be found to have provided ineffective assistance with respect to Defendant being sentenced for distributing at least 28 grams but less than 112 grams of cocaine base.[4]

Defendant next argues that counsel was ineffective for failing to request a severance of his case "per Rule 8 and 14." (R. 519, at 7). The Court presumes that Defendant is referring to the Federal Rules of Criminal Procedure since this is a federal criminal proceeding. Defendant believes a severance of his indicted charges from the other Defendants would have reduced the amount of crack cocaine attributable to him. But Defendant's reference to Rule 8 is made in error. Rule 8 merely provides for joinder of offenses and defendants in criminal indictments and informations, and

---

[4]To the extent Defendant argues there was evidence that he did not willingly assist co-Defendant Bryant in distributing 37.79 grams of cocaine base to a CI, the Court explained to him during his rearraignment the rights he was giving up by pleading guilty, including the right to a trial where he could testify in his own defense or compel others to come testify for him. Defendant told the Court that he understood the Government has the burden to prove his guilt beyond a reasonable doubt, and that by pleading guilty he knew he was waiving his rights associated with a trial on the matter. Further, Defendant stated that he agreed the Government could prove the factual basis of the plea as set forth in paragraph 3 of the Plea Agreement. (R. 540, at 10-12).

11

a motion pursuant to that Rule would not provide Defendant any relief.[5]  Defendant does advance a plausible avenue of relief by citing Rule 14, which provides for relief from prejudicial joinder.[6] But Defendant's claim that counsel was ineffective for failing to seek to sever Defendant from the rest of the Defendants in this case is without merit because Rule 14 is intended to prevent prejudice to a Defendant at trial, where a jury could infer guilt by association.  This case never went to trial because Defendant signed the Plea Agreement admitting guilt.  (R. 333; R. 459).  Even if defense counsel had acted under Rule 14, there is no guarantee that Defendant's case would have been separated from the other Defendants because of the discretionary nature of the Rule.  Rule 14 gives a trial court the option of severing defendants' trials, thereby balancing the risk of guilt by association against the benefits of a joint trial for the judicial system.  *See United States v. Jackson*, 33 F.3d 866, 875-76 (7th Cir. 1994).  It is unlikely that the trial court would have granted a motion to separate the Defendants in this case, given the charge of conspiracy and the considerable efficiency benefits of consolidation.

Defendant also claims that counsel was ineffective for failing to file a Rule 29 motion for a judgment of acquittal.  (R. 519, at 6).  But Rule 29 of the Federal Rules of Criminal Procedure does not apply to Defendant since the Rule, by its terms, requires a trial to have occurred.  Here, Defendant pled guilty as part of the Plea Agreement; there was no trial.  (*See* R. 333; R. 459).  Thus,

---

[5]"The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction . . . constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count."  Fed. R. Crim. P. 8(b).

[6]"If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . the court *may* order separate trials of counts, sever the defendant's trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a) (emphasis added).

counsel would not have had a legal basis for filing such a motion, and Defendant's claim that counsel was ineffective for failing to file a Rule 29 motion is without merit.  *See United States v. Hemphill*, 1:10-cr-53, 2012 WL 440890, at *5 (S.D. Ohio Feb. 10, 2012) ("Because there was a guilty plea and no trial, there was no occasion to file a Rule 29 motion and it was therefore not ineffective assistance of trial counsel to fail to file one."), *adopted by* 2012 WL 727074 (S.D. Ohio Mar. 6, 2012).

Finally, Defendant claims that counsel was ineffective because without counsel's professional errors, Defendant would not have pled guilty and would have instead insisted on going to trial.  (R. 519, at 6).  Specifically, Defendant asserts that counsel erred by continually threatening him that if he did not sign the Plea Agreement, he would receive a 20-year term of imprisonment. (*Id.*).  Further, Defendant argues that counsel should have more fully explained the United States' burden of proof.  (*Id.*).  Defendant's claim is unconvincing.  First, it cannot be said that counsel, by warning Defendant of the potential penalties of his offenses if convicted at trial, acted ineffectively. If anything, advising Defendant of the mandatory minimum sentence he would receive if convicted by a jury is an example of what one would expect of reasonably competent counsel.  As to the latter claim, Defendant stated in the Plea Agreement and under oath in open court that he was aware of the nature of the charges against him–including the United States' burden of proof–and that he had been sufficiently advised by his counsel.  (R. 333; R. 540, at 10-11).  Further, as set forth above, the District Court specifically asked Defendant if he was satisfied with his counsel's representation, to which he replied "yes, I am."  (R. 540, at 3-4).  Again, sworn representations of a defendant, during his plea, carry a strong presumption of verity.  *Blackledge*, 431 U.S. at 73-74.  Accordingly, these claims are not supported by the record.

13

**B.      Defendant's claim that the District Court lacked subject-matter jurisdiction is meritless.**

In his present § 2255 Motion, Defendant claims that his sentence should be vacated because the District Court did not have subject-matter jurisdiction over him.  Defendant argues that he was convicted of crimes that occurred on land solely controlled by the Commonwealth of Kentucky.  (R. 519, at 2; R. 708, at 1).  In response to this argument, the United States argues this claim was waived by Defendant's valid Plea Agreement and by Defendant's failure to raise this argument on direct appeal.  (R. 542, at 3-9).  In the alternative, the United States asserts that this claim lacks merit.  (*Id.* at 9).   Defendant's subject-matter jurisdiction claim was not waived, since such claims may be raised at any time, regardless of a waiver.  *See Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) ("[The subject-matter jurisdiction argument is] reviewable because subject matter jurisdiction is not subject to waiver.", *citing United States v. Titterington*, 374 F.3d 453, 459 (6th Cir. 2004)); *see also United States v. Rickards*, No. 4-10, 2007 WL 2915180, at *8 (E.D. Ky. Oct. 5, 2007) ("[J]urisdictional issues are never waived and can be raised on collateral attack.", *quoting United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993)).

Although Defendant's argument was not waived, a review of Defendant's claim reveals that it is without merit.  Section 3231 of Title 18 states, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  Here, Defendant pled guilty to two counts of distributing crack cocaine, both in violation of 21 U.S.C. § 841(a)(1), a federal criminal statute.  In addition, the Sixth Circuit has repeatedly upheld convictions where individuals have challenged the district court's jurisdiction over federal crimes that took place on a state's land, and not in a federal territory.  *See, e.g., United States*

14

*v. Mundt*, 29 F.3d 233, 237 (6th Cir. 1994) (Defendant argued that the district court lacked jurisdiction over him because he was a Michigan resident and not a resident of any federal territory; therefore, he was not subject to federal income tax laws.  The Sixth Circuit considered this claim to be "completely without merit and patently frivolous."); *see also United States v. Russell*, 30 F. App'x 348, 351-52 (6th Cir. 2002) ("[Defendant] asserts in his pro se brief that the district court lacked subject matter jurisdiction over his offense because it occurred on private property within the state of Ohio, not on federal territory.  This argument is patently meritless.  Federal courts have exclusive jurisdiction over offenses against the laws of the United States under 18 U.S.C. § 3231 and the permission of the states is not a prerequisite to exercise that jurisdiction.").

Further, the presiding District Judge has addressed this very argument and held that the Court has subject-matter jurisdiction over drug activities that may be local in nature yet violate laws of the United States.  *See United States v. Bolling*, 5:10-cr-75-JMH, 2014 WL 790866, at *4 (E.D. Ky. Feb. 26, 2014) (overruling defendant's objection to the Magistrate Judge's Report and Recommendation that rejected his claim the court lacked subject-matter jurisdiction because drug activity took place entirely within Kentucky).  As explained in *Bolling*, the Supreme Court's analysis in *Gonzales v. Raich*, 545 U.S. 1 (2005) undermines this type of subject-matter jurisdiction argument.

> In *Raich*, the Court noted that "even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." *Id*. at 17 (quoting *Wickard v. Filburn*, 317 U.S. 111, 125 (1942)).  Thus, in *Raich*, the Court found that regulating the cultivation of marijuana, even that grown only for home consumption, "is squarely within Congress' commerce power because production of the commodity meant for home consumption . . . has a substantial effect on supply and demand in the national market for that commodity." *Id*. at 19.  Further, the Court described the Controlled Substances Act [CSA], 21 U.S.C. § 801 *et seq*. as "a statute

that regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market" and noted that the activities regulated by the CSA are "quintessentially economic." *Id*. at 25-26. Thus, relying on *Raich*, the Magistrate Judge found that, even if Defendant was only engaged in "local" activities, the aggregate effect of the illegal drug trafficking market brought regulation of intrastate activities under Congress' Commerce Clause power. Accordingly, the Magistrate Judge found that Congress was within its power to enact the CSA, including 21 U.S.C. §§ 841 and 846, which Defendant was convicted of violating. Because 18 U.S.C. § 3231 grants federal district courts jurisdiction over "all offenses against the laws of the United States," the Magistrate Judge found that this Court has subject matter jurisdiction to adjudicate Defendant's case.

*Bolling*, 2014 WL 790866, at *2. The presiding District Judge adopted the Magistrate Judge's legal analysis and held that "the Court has subject matter jurisdiction over [Defendant's] case, regardless of whether the activities for which Defendant was convicted were purely local in nature and did not take place in an exclusively federal territory." *Id*. at *3.

This same analysis applies here. Although Defendant asserts his activities did not affect interstate commerce, drug activities regulated by the Controlled Substances Act are "quintessentially economic," and the aggregate effect of illegal drug distribution brings the activity within Congress's power under the Commerce Clause. Moreover, with Defendant having pled guilty to two counts of violating 21 U.S.C. § 841, the Court had jurisdiction to hear the matter pursuant to 18 U.S.C. § 3231. Accordingly, Defendant's claim that the District Court lacked subject-matter jurisdiction over him fails.

**C.      Defendant's claim that his sentence is in violation of the law because it was based upon an improper amount of cocaine base is without merit.**

In his Response to the Supplemental Response of the United States (R. 569), Defendant argues that his current sentence is in violation of law because although he did not plead to the conspiracy charge, he was sentenced using the amount of drugs involved in the conspiracy. Again,

16

his collateral attack of his sentence is barred by the waiver in his Plea Agreement for the same reasons as stated above. His claim also fails on the merits.

Defendant asserts he should be resentenced based on the guideline range for .3 grams of crack cocaine, which he asserts is the amount of drugs associated with his specific conduct. (*Id.* at 3). The Plea Agreement, however, outlined the relevant conduct that was the basis of Defendant's guilty plea and the calculation of his guidelines. It included not only Defendant personally selling 858 milligrams of cocaine to the confidential informant on May 3, 2010, but also his providing co-Defendant Bryant with 37.79 grams of crack cocaine that Bryant sold to a confidential informant on May 4, 2010. (R. 333, at 2-3). Defendant specifically agreed to this conduct in the Plea Agreement and during the plea colloquy with the Court, and it was properly considered as relevant conduct under § 1B1.3 of the Sentencing Guidelines. (*Id.*; R. 540, at 9-10). Thus, the sentence was not imposed in violation of the Constitution, any law of the United States, or in excess of the maximum authorized by law.

Defendant also argues in his Supplement (R. 708-1), that he is actually innocent of distributing more than 28 grams of cocaine base because a jury was required to determine the amount of drugs attributable to him, citing *United States v. Alleyne*, 133 S. Ct. 2151 (2013). However, *Alleyne* does not apply to Defendant's sentence. Faced with a similar argument in a § 2255 proceeding that the district court erred in applying the Federal Sentencing Guidelines by engaging in judicial fact-finding, the Sixth Circuit has held that *Alleyne* did not apply on collateral review of the defendant's sentence. *Rogers v. United States,* 561 F. App'x 440, 443-44 (6th Cir. 2014). Citing *Teague v. Lane,* 489 U.S. 288, 310-11 (1989) (plurality opinion), the Circuit Court noted that the new rule of criminal procedure adopted in *Alleyne* did not apply to defendant Rogers's collateral

17

proceeding because his conviction had become final prior to the Supreme Court's *Alleyne* decision. *Id.* Therefore, *Alleyne* does not apply to Defendant Hutsell's § 2255 Motion.  Moreover, his argument lacks merit because he admitted to the facts at issue.  *See United States v. Johnson*, 732 F.3d 577, 583-84 (6th Cir. 2013); *United States v. Yancy*, 725 F.3d 596, 601-02 (6th Cir. 2013) ("Because *Alleyne* did not involve the effect of a defendant's admission of the facts necessary for an aggravated crime, it leaves undisturbed our cases deeming such admissions fatal to *Apprendi [v. New Jersey,* 530 U.S. 466 (2000)] claims.").  This claim therefore fails.

### D.    Defendant's claim that he was improperly subjected to the enhanced mandatory minimum for Count 6 is baseless.

Finally, in his Supplement (R. 708-1) Defendant argues that his sentence should not have been enhanced under 21 U.S.C. §§ 841(b)(1)(B) or 851 because he is not within the "zone of interests" that Congress intended to protect by the statutes.  (R. 708-1, 12-17).  Specifically, Defendant argues that the Sentencing Committee's 2011 Report on Mandatory Minimums explains that Congress did not intend for the mandatory minimums to be applied to low-level dealers, and that Congress instead intended the enhancement to punish managers of drug enterprises.

Again, as explained above, the waiver contained in Defendant's Plea Agreement specifically waived his right to collaterally attack his sentence herein, and thus bars his collateral attack on the issue of whether he was properly subject to the enhanced mandatory minimum on Count 6.  *United States v. Darby*, No. 12-4467, 2014 WL 66874, at *1 (6th Cir. Jan. 9, 2014) (waiver in plea agreement precluded Defendant from challenging on appeal that his sentence was improperly enhanced due to error in § 851 notice); *Smith v. United States*, No. 1:10-cv-19, 2011 WL 1327344, at *2 (W.D. Mich. Apr. 6, 2011) (collateral attack challenging guideline enhancements was waived

in plea).  Thus, Defendant's waiver of his right to appeal or collaterally attack his sentence would also bar review of this claim.

Moreover, Defendant was ultimately sentenced pursuant to the negotiated and agreed-upon sentence contained in the binding Plea Agreement after the Court established a proper factual basis for the plea and sentence.  While the enhancement was likely considered by the parties in reaching their agreement on the 144-month sentence, it was not the basis for the Court's ultimate sentence herein.

Nevertheless, even if the Court were to consider this supplemental claim, it has no merit.  While, as Defendant suggests, statutory mandatory minimums have been the subject of much scrutiny, *see United States v. Kupa*, No. 11-cr-345, 2013 WL 5550419 (E.D.N.Y. Oct. 9, 2013), Congress has not chosen to eliminate them from the relevant sentencing statute.  Here, Defendant admitted in his Plea Agreement to having a prior drug felony conviction (*see* R. 333, at 3; R. 540, at 7-8), and pursuant to 21 U.S.C. § 841(b)(1)(B) he is subject to the increased statutory minimum.  That Defendant received a 5-year suspended sentence on the prior conviction (*see* R. 708-1, at 13) does not change the application of the enhancement.  The enhancement requires only that the prior conviction be *punishable* by more than one year of imprisonment, regardless of whether such a sentence was ultimately imposed.  *See Burgess v. United States*, 553 U.S. 124 (2008) (prior drug offense punishable by more than one year imprisonment considered a felony drug offense for purposes of enhancement under § 841(b)(1)(B)); *Albo v. United States*, 498 F. App'x 490, 496-97 (6th Cir. 2012) (mere possibility defendant might have been sentenced to less than one year on prior felony is irrelevant when determining if prior offense is a "felony drug offense" for enhancement purposes).

19

## III.   CERTIFICATE OF APPEALABILITY

The final question is whether Defendant is entitled to a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253(c).  Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a COA when it enters a final order adverse to the applicant.  A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2).   The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

Here, reasonable jurists would not debate the denial of Defendant's remaining claims presented in his § 2255 Motion -- ineffective assistance of counsel, lack of subject-matter jurisdiction over him, sentencing based on an improper quantity of cocaine, or improper application of mandatory minimum sentencing enhancement -- or conclude that these issues are adequate to deserve

20

encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will not be recommended that a COA be issued as to these claims.

## IV.   CONCLUSIONS

### A.   ORDER

For the reasons stated herein, **IT IS ORDERED** that Defendant's Motion to Supplement Pleadings (R. 708), is hereby **granted.**

### B.   RECOMMENDATIONS

Also for the reasons stated herein, **IT IS RECOMMENDED** that:

1.      Defendant's request in his § 2255 Motion for sentence reduction having been recently adjudicated (*see* R. 745), all remaining claims in Defendant's Motion To Vacate, Set Aside, or Correct a Sentence Pursuant to § 2255 (R. 519) be **denied;**

2.      a certificate of appealability be **denied** as to these remaining claims;

3.      a Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and,

4.      this action be **stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District

Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 29th day of January, 2015.



Signed By:

**_Candace J. Smith_**

**United States Magistrate Judge**

G:\DATA\habeas petitions\2255 R&R general\10-78 Hutsell R&R on all but sent reductn claims.wpd